AQUIONICS ACCEPTANCE
CORPORATION,
Plaintiff-Appellant,

v.

Richard KOLLAR, et al.,
Defendants-Appellees.

No. 75–2203.

United States Court of Appeals,
Sixth Circuit.

Argued April 2, 1976.

Decided June 22, 1976.

Jeffrey E. Zink, Amerman, Burt & Jones, James R. Brandon, Canton, Ohio, for plaintiff-appellant.

Owen C. Neff, Snyder, Neff & Chamberlin, Cleveland, Ohio, for defendants-appellees.

Before PECK, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

 This cause is before the court for the second time. A jury trial resulted in a

verdict and judgment for the defendants, but this court reversed on an error in the instructions. 503 F.2d 1225 (6th Cir. 1974). The second trial also resulted in a jury verdict for the defendants and the sole issue on appeal is whether the plaintiff was entitled to a directed verdict at the close of all the evidence. It should be pointed out that Aquionics failed to make a motion for judgment n. o. v. When this occurs an appellate court may not direct entry of a judgment, but may only order a new trial if an examination of the entire transcript reveals that the appellant was entitled to a directed verdict. *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *Union News Co. v. Hildreth*, 295 F.2d 658, 667 (6th Cir. 1961), *cert. denied*, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963).

Statler Engine Corporation (the corporation) was founded in 1970 to design and manufacture low pollution internal combustion engines. The articles of incorporation authorized 1000 shares of no par value stock. The incorporators adopted a stated value of $1000 per share. Lowell E. Statler, the inventor of the rotary type engine, was issued 520 shares of authorized stock solely in exchange for an agreement giving the corporation exclusive license to make, use and sell engines covered by a United States patent which had been issued to Statler. The directors adopted a resolution valuing the exclusive license at $520,000.

Though a number of other investors including several of the defendants purchased stock from the corporation at $1000 per share the company was short of capital from the beginning. Aquionics Acceptance Corporation (Aquionics) became interested in utilizing the Statler engine on a small golf cart for which it held a franchise. After some negotiations the corporation and Aquionics executed a licensing agreement on March 28, 1972 by which Aquionics was granted a sublicense which gave it the exclusive right to use of the Statler invention on golf carts manufactured, used or sold in the United States. As consideration for the sublicense Aquionics agreed to purchase 50 shares of stock from the corporation at $1000 per share. The stock was issued to Aquionics on August 3, 1972. The licensing agreement was the only writing between Aquionics and the corporation.

The Statler engine never operated satisfactorily and Aquionics became dissatisfied with its investment. In January 1973 it filed this action, claiming that unauthorized representatives of the corporation had made fraudulent misrepresentations in connection with the sale of stock to Aquionics. Damages were sought under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. The alleged misrepresentations recited in the complaint related to whether the corporation had developed a working engine, the development of a golf cart employing the Statler engine, the existence of contracts for the sale of engines, the interest of other investors in purchasing stock of the corporation and the existence of a patented "tip seal" which could be sold by the corporation for $1,000,000, in addition to the charge that—

> Plaintiff was told that all the stock of the corporation had been sold for $1,000.00 per share when only a few months earlier 240 shares had been sold to a group of insiders for $166.67 per share.

There was proof at the trial with respect to all the alleged misrepresentations, but this appeal is concerned only with the issue of the prior sale of stock for $166 per share. On August 31, 1970 the shareholders entered into a pre-emptive agreement by which each shareholder agreed that neither he nor his estate would sell shares in the corporation to any outsider without first offering the shares at $1,000 per share to the corporation. The agreement further provided that if the corporation should fail to accept the offer of a deceased or retiring shareholder within 30 days, the stock would then be offered to the remaining shareholders for 30 days, at the agreed price. Finally the agreement provided—

> If the Corporation and the Shareholders fail to purchase such shares within the above option period, then the restrictions

imposed upon such shares by this paragraph shall automatically terminate at the end of such option period.

Prior to July 17, 1971 Lowell E. Statler, the inventor, offered his stock to the corporation at the stipulated price. The minutes of a directors' meeting held on July 17th disclose that the corporation declined to exercise its option to purchase the shares of Mr. Statler and directed that the required notices of the offer be sent to all shareholders. On December 15, 1971 the remaining shareholders purchased the shares of Lowell Statler for $166 per share. The sale of Statler's stock to the other shareholders took place well after expiration of the option period and did not violate the agreement. Witnesses for Aquionics testified that they did not learn of the sales at $166 per share until after they had bought in at $1000 per share and that various defendants told them that no stock had ever been sold by the corporation for less than $1000 per share.

■ It is established beyond question that failure to disclose a material fact in a securities transaction is a violation of Section 10(b) and Rule 10b–5. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Arber v. Essex Wire Corporation*, 490 F.2d 414 (6th Cir.), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 56 (1974). In the *Essex Wire* case this circuit adopted the objective test of materiality enunciated in *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). This test was stated to be: "[W]hether a reasonable man would have attached importance to the undisclosed facts in determining his choice of action in the particular transaction in question." 490 F.2d at 418. *See also Chelsea Associates v. Rapanos*, 527 F.2d 1266 (6th Cir. 1975).

■ The defendant Nicholas Tramont testified that the only representation he ever made or which was made in his presence with respect to the price at which stock in the corporation had been sold was the true statement that none had been issued by the corporation at less than $1000 per share. Though he never informed representatives of Aquionics of his purchase of stock at $166 per share, he testified that the $166 transactions were revealed by the corporate records, including the minute book and various correspondence and memoranda, which were made available to the Aquionics people. A trial court may direct a verdict "[o]nly if reasonable men could not reach differing conclusions on the issue . . . ." *Baker v. Texas & Pacific Railway Co.*, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959). In reviewing a trial court's ruling on a motion for a directed verdict an appellate court must view all evidence in the light most favorable to the non-moving party and give that party the benefit of all inferences, fairly supported by the evidence. *Champion Oil Service Co. v. Sinclair Refining Co.*, 502 F.2d 709 (6th Cir. 1974), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 401 (1975). Thus viewed we believe that two jury issues were presented by the evidence in this case.

■ The first issue was whether there was either a misrepresentation or a nondisclosure with respect to the price of previous sales of stock. During oral argument in this court counsel for Aquionics argued that Nicholas Tramont had admitted misrepresenting the price of the previous sales. An examination of the transcript pages relied upon for this assertion reveals that the witness testified only that he told the Aquionics representatives that no sale by the corporation had been made for less than $1000 per share except that issued to the inventor on the basis of $1000 per share. His only testimony on disclosure of the $166 sales was that, at one of several meetings between Aquionics representatives and those of the corporation, no one stated that the stock of Lowell Statler had been sold to other shareholders at $166 per share. He asserted, however, that information which was made available to Aquionics revealed these transactions. This testimony was directly opposed to that of witnesses for Aquionics and thus created an issue of credibility for the jury to resolve.

Even if it were concluded that there had been no disclosure of the $166 sales, the evidence would have created an issue for the jury on the materiality of the nondisclosure. Ordinarily it might be presumed that a reasonable buyer of stock would attach importance to the price at which stock in the same company had sold in the recent past. However, Aquionics was not an ordinary purchaser of stock. Its primary interest could easily be found to lie in obtaining the exclusive sublicense to manufacture and sell golf carts which utilized the Statler engine. The jury could have found from the evidence that Aquionics was willing to invest $50,000 in the corporation in order to obtain the sublicense, and that the price it paid per share was not material. We agree with the statement of the Second Circuit in *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 888 (1972), that—

For the determination of whether information is material or, alternatively stated, of whether such information would have affected the actions of a "reasonable man" the jury is the appropriate body.

*See Britt v. Cyril Bath Company*, 417 F.2d 433, 437 (6th Cir. 1969).

The judgment of the district court is affirmed.