**Ralph NASH and Otto G. Green et al., Plaintiffs-Appellants,**

v.

**FARMERS NEW WORLD LIFE INSURANCE COMPANY and Farmers Group, Inc., et al., Defendants-Appellees.**

No. 76–1819.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1977.

Decided and Filed Feb. 8, 1978.

Lyman Brownfield, Brownfield, Kosydar, Bowen, Bally & Sturtz, Columbus, Ohio, Roger A. Parkinson, Long & Levit, Los Angeles, Cal., for plaintiffs-appellants.

Dwight I. Hurd, Jack A. Bjerke, Tingley, Hurd & Emens, Columbus, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Circuit Judge, CELEBREZZE, Circuit Judge, and MARKEY, Chief Judge of the Court of Customs and Patent Appeals.[*]

CELEBREZZE, Circuit Judge.

This class action was brought by minority shareholders of the Ohio State Life Insurance Company (OSLICO) seeking damages for alleged violations of the securities laws. The District Court entered a judgment on the merits against Appellants after a bench trial.

Appellee Farmers New World Life Insurance Company (Farmers) is incorporated under the laws of the State of Washington.

OSLICO is incorporated in Ohio. In 1965 Farmers purchased ninety-five percent of outstanding OSLICO shares via a tender offer. Seven years later, in 1972, Farmers decided to acquire the remaining shares of OSLICO by effecting a merger,[1] in which OSLICO shareholders would be offered one share of Farmers stock for every two shares of OSLICO stock. At this time, Farmers stock was trading at about $60 per share, while OSLICO stock was trading at about $14 per share.[2]

The Boards of Directors and Shareholders of both corporations[3] approved the proposed merger—OSLICO minority shareholders were thus left with the option of either accepting the merger terms or exercising their rights as dissenters under Ohio Corporation Law. Under the latter procedure, shareholders are entitled to recover the "fair cash value" of their stock as determined by court-appointed appraisers. Ohio Rev. Code Ann. § 1701.85. Several OSLICO minority shareholders did dissent from the merger, and their stock was appraised at a value of $28 per share in the court proceedings.

Appellants subsequently brought this suit, alleging, *inter alia*, that the exchange terms of the 1972 merger were grossly unfair, and that a proxy statement issued in connection with the merger was materially misleading. They sought damages under Rule 10b–5 of the Securities and Exchange Commission, which prohibits the use of "any device, scheme, or artifice to defraud" or the making of any materially misleading statement in connection with the purchase or sale of any security.[4] The trial court

---

[*] Honorable Howard T. Markey sitting by designation.

1. The merger was actually effected between OSLICO and FNW, Inc., a wholly owned subsidiary of Farmers incorporated in Ohio. Farmers created FNW expressly for the purpose of this merger, in order to qualify for certain tax preferences. The capital of FNW consisted of 53,398 shares of Farmers stock.

2. At the time of the merger there was no active market for OSLICO stock, since only 5% of its shares were outstanding. Some trading did

take place, however, and the stock generally brought between $10 and $14 per share in those transactions. Both Farmers and OSLICO shares were traded on the over-the-counter market at the time of the merger.

3. The two companies involved were actually OSLICO and FNW, Inc. *See* note 1, *supra.*

4. Rule 10b–5 was promulgated under § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, which provides in relevant part:

   It shall be unlawful for any person, directly or indirectly, by the use of any means or

rejected Appellants' claims, finding that the exchange terms were fair and that the proxy statement was not materially misleading. Appellants challenge both of those findings in this appeal.[5]

▇▇▇ As to the fairness of the exchange, the issue is essentially one of fact, and the finding of the District Court should not be disturbed unless clearly erroneous. See *Nanfito v. Tekseed Hybrid Co.*, 473 F.2d 537, 541 (8th Cir. 1973). We have reviewed the record and find substantial evidence that the exchange terms were equitable. In receiving one Farmers share (market value, $60) for every two OSLICO shares (market value $14), OSLICO shareholders obtained approximately $30 in cash

equivalent for each OSLICO share. Although the market value of OSLICO stock was low at the time of the merger due to an inactive market for the stock, none of the experts who testified at trial valued the shares at over $30. As already noted, court appointed appraisers valued the shares at $28 in state proceedings. Based on this evidence, the District Court could reasonably conclude that OSLICO shareholders were adequately compensated in the exchange.[6]

▇▇▇ As to the District Court findings that there were no material misrepresentations in the proxy statement, we likewise affirm under the clearly erroneous standard.[7] The Court properly rejected claims

instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5, 17 CFR § 240b–5 (1976), provides:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

5. The District Court also rejected on the merits a pendent claim of breach of fiduciary duty under state law. We find no error in that holding.

6. The Appellants produced an expert witness who testified that the "intrinsic"—as opposed to market—value of Farmers stock was only $20 per share at the time of the merger, thus suggesting an exchange ratio of one and one-

half Farmers shares for each OSLICO share. The District Court was not obligated to follow this valuation in view of other expert testimony indicating a much higher value for Farmers' stock at the time of the merger.

7. In *Chelsea Assoc. v. Rapanos*, 527 F.2d 1266, 1270 (6th Cir. 1975), we held that a district court's finding of non-materiality of misstatements in a 10b–5 action was reviewable under the clearly erroneous standard. The Supreme Court has since characterized the materiality issue as "a mixed question of law and fact." *TSC Ind. Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). In general, this court does not apply the clearly erroneous rule in reviewing mixed law-fact determinations by a District Court Judge. *See, e. g., United States v. Weingarden*, 473 F.2d 454, 460 (6th Cir. 1973); *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 154 (6th Cir. 1973). In *Northway*, however, the Supreme Court also pointed out that the determination of materiality "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, *and these assessments are peculiarly ones for the trier of fact.*" 426 U.S. at 450, 96 S.Ct. at 2133 (emphasis supplied). In light of this language, we adhere to our decision in *Chelsea Assoc. v. Rapanos, supra*, to review determinations of non-materiality under the clearly erroneous standard. *Cf. Aquionics Acceptance Corp. v. Kollar*, 536 F.2d 712, 714–15 (6th Cir. 1976). Of course, the clearly erroneous standard would not apply if we were reviewing a claim that the District Court relied on an improper legal definition of materiality in reaching its findings. *See generally United States v. Parke Davis & Co.*, 362 U.S. 29, 43–45, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *United*

by Appellants that failure to state certain items on a per share basis, or to present certain figures on a consolidated basis, was materially misleading. The evidence established that per share and consolidated data could be calculated from other figures presented in the statement. The proxy statement was approximately thirty pages and contained detailed financial statements for both Farmers and OSLICO.

■■■ Having found no evidence of unfairness or misrepresentation, the District Court correctly ruled that no violation of Rule 10b–5 had occurred. A claim of fraud or breach of fiduciary duty in a merger states a claim for relief under Rule 10b–5 "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive'" within the meaning of § 10(b) of the Securities Exchange Act. *Santa Fe Ind., Inc. v. Green,* 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977). "Manipulation" under the Act "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id.* at 476, 97 S.Ct. at 1302. Such activities were never alleged in this case. The gravamen of Appellants' claim is that the merger terms were unfair,[8] not that Defendants manipulated prices.[9] Plaintiffs did allege deception, but the District Court disposed of this claim in holding that there were no material omissions or misrepresentations in the proxy statement. *See id.* at 474, 97 S.Ct. 1292.

We have considered all of the other claims raised by Appellants and find them to be without merit.

The judgment of the District Court is affirmed.

---

*States v. United States Gypsum,* 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Plaintiffs make no such claim in this case; they merely challenge factual determinations by the trial court and do not question the legal standard under which those determinations were made.

8. It should be noted that an allegation of unfairness in merger terms, standing alone, does not state a claim for relief under Rule 10b–5. The fundamental purpose of the Securities Exchange Act was to implement a philosophy of full disclosure; "once full and fair disclosure has occurred, the fairness of the terms of the

transaction is at most a tangential concern of the statute." *Santa Fe Ind., Inc. v. Green,* 430 U.S. 462, 477–78, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977). *See Marsh v. Armada Corp.,* 533 F.2d 978, 984–86 (6th Cir. 1976), *cert. den.,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).

9. Plaintiffs maintain that Farmers' 1965 acquisition of 95% of OSLICO shares "destroyed the market" for OSLICO shares. Although this may be true, it hardly amounts to "manipulation" of prices. Plaintiffs concede that the 1965 exchange was fair to all parties.