**Louis L. HERM et al., Plaintiffs,**

**v.**

**Daniel W. STAFFORD et al.,
Defendants.**

**No. 6651.**

United States District Court,
W. D. Kentucky,
Louisville Division.

Nov. 6, 1978.

Spencer E. Harper, Jr., William W. Davis, Louisville, Ky., J. Vernon Patrick, Birmingham, Ala., for plaintiffs.

Frank A. Logan, Louisville, Ky., for defendant, Chandler, Sr.

## MEMORANDUM AND ORDER

BALLANTINE, District Judge.

Defendant Albert B. Chandler, Sr., (hereinafter Chandler, Sr.) has asked the Court to reconsider his motion to dismiss the complaint against him. The defendant's original motion to dismiss was denied by order of this Court on February 10, 1971. The motion to reconsider was filed on October 19, 1976, and is supported by a supplemental memorandum filed on March 3, 1978. Defendant states the following as grounds for dismissal of the action: (1) Plaintiffs lack standing to sue; (2) In the absence of any alleged intent to defraud, plaintiffs have failed to state a cause of action; and (3) Plaintiffs have failed to comply with the notice requirements of F.R.Civ.P. 23(c).

This action was spawned by the merger between Daniel Boone Fried Chicken, Inc. (DBFC), a Kentucky corporation, and Commonwealth Security Investors (CSI) in May of 1969. CSI was an investment company registered with the Securities & Exchange Commission (SEC) pursuant to the Investment Company Act of 1940, 15 U.S.C. Section 80a–1 et seq. Defendant Chandler, Sr., as Chairman of CSI's Board of Directors, presided over the May 19, 1969, directors' meeting which approved the DBFC transaction. He had also been in the employ of DBFC since March of 1969, with an annual salary of $25,000. His official capacity at DBFC prior to August 1, 1969, is disputed. Defendant claims to have worked exclusively in public relations and promotional endeavors, with a hand in cultivating prospective board members. He admittedly became Chairman of DBFC's Board of Directors on August 1, 1969 (Chandler, Sr. Depo. p. 120). However, he never denied public reports that he was Chairman of the Board prior to that date.

Chandler, Sr., was named a party defendant in the amended complaint filed on October 15, 1970. Plaintiffs alleged various violations of the Securities Act of 1933, 15 U.S.C. Section 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. Section 78a et seq. Plaintiffs based defendant's liability upon his alleged role as a "controlling person" of DBFC under Section 15 of the 1933 Act, 15 U.S.C. Section 77 *o*, and Section 20 of the 1934 Act, 15 U.S.C. Section 78t. Count I concerned DBFC's

failure to comply with SEC security registration requirements; Count II averred Section 10(b) and Rule 10b–5 violations in the purchase or sale of DBFC securities[1]; and Count III alleged the absence of a prospectus accompanying DBFC securities as required by Section 10(a) of the 1933 Act, 15 U.S.C. Section 77j.

A second amended complaint was filed on October 20, 1972. Chandler, Sr., was again described as a "controlling person" of DBFC. Additional liability was founded on his performing legal services for DBFC and CSI and also as a "controlling person" of CSI under Section 48 of the 1940 Act, 15 U.S.C. Section 80a–47. Counts I through III alleged numerous violations of the Securities Acts by all defendants generally. Included therein were activities of defendant Chandler, Sr. Count VII referred to defendant Chandler, Sr., specifically. It alleged that the "Explanation" accompanying the proxy solicitation materials mailed to CSI shareholders on May 9, 1969, "contained false, untruthful and deceptive statements of material fact, and omitted to disclose material facts which were necessary to be stated in order to make the 'Explanation' in its tendered form not misleading, false, and deceptive. Said 'Explanation' contained the statement that 'the prospects for Daniel Boone Fried Chicken Corporation are very good,' which statement was false, as, in fact, Daniel Boone was, at said time, insolvent, and had then suffered a net operating loss of not less than half a million dollars." (Count VII, para. 3). The "Explanation" further failed to disclose: (1) that Chandler, Sr., an "affiliated person" of CSI as defined by the 1940 Act, 15 U.S.C. Section 80a–2(a)(3), had accepted moneys from DBFC, the proposed partner to the reorganization; (2) that the above materials had not been submitted to the SEC in advance of mailing; and (3) that as an "affiliated person" of CSI, Chandler, Sr. performed transactions on behalf of CSI without an application (for exemption) under SEC Rule 17d–1 having been filed with or granted by the SEC. Count VII further alleged breach of fiduciary duties by failing to make reasonable inquiries into DBFC's financial condition. Defendant was also charged with fostering a false market in DBFC securities. Count VIII premised defendant's liability on his performance of legal services for both DBFC and CSI. Plaintiffs contend that defendant gave legal advice and counsel, prepared or reviewed news letters, brochures to shareholders, corporate correspondence, releases to news media, articles of incorporation, by-laws, minutes, contracts, lease agreements, franchise agreements, promotional materials, and various other corporate documents. As legal counsel, defendant failed to disclose material information to the plaintiffs. Thirteen instances of such failure were set forth in Count VIII. It is alleged that these acts were performed either intentionally, negligently or with wanton and reckless disregard for his professional duties.

Defendant's pending motion focuses on Section 10(b) and Rule 10b–5. He cites

---

1. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—* * * *

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest. 15 U.S.C. Section 78j(b).

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instru-

mentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. Section 240.10b–5.

three United States Supreme Court cases, decided subsequent to this Court's Order of February 10, 1971, as authority to dismiss the complaint against him. Defendant contends that the standards governing the pending motion have been changed by these decisions.

■ The Court first turns to defendant's argument that plaintiffs, alleging that they "held" and "were induced to retain" DBFC securities because of misleading or deceptive statements by the defendant, have no standing to sue under Rule 10b–5. Defendant relies on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). *Blue Chip*, in upholding the so-called *Birnbaum*[2] rule, "holds that a person who was not an actual purchaser or seller of a security has no standing to bring an action for damages based on Rule 10b–5 violations." *Braun v. Northern Ohio Bank*, 430 F.Supp. 367, 372 (N.D.Ohio 1977). A person lacks standing under Rule 10b–5 if he claims that a fraudulent activity caused him not to purchase stock which he otherwise would have purchased, or to not sell stock which he otherwise would have sold. *Marsh v. Armada Corp.*, 533 F.2d 978 (6th Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977). The Court in *Marsh* explained the *Birnbaum* rule as follows:

"The basis of the rule is a policy determination that to permit suits by persons who claim inaction in reliance on fraudulent claims would open the door to vexatious and meritless lawsuits by persons who never owned stock but who comb the financial pages for possible inaccuracies which could support colorable claims with significant settlement value. Furthermore, the proof in such a lawsuit would consist of the plaintiff's unsupported testimony that he intended to purchase or sell a certain stock but that he did not do so after reading a certain report. In requiring a purchase or sale to occur, the *Birnbaum* rule seeks to support a claim of

reliance by the fact that the plaintiff purchased or sold stock soon after an allegedly fraudulent act occurred." *Marsh*, 533 F.2d at 981.

The defendant cites *Marsh* for the proposition that shareholders with a "reliance by inaction" claim have no standing to sue under *Birnbaum*.[1] However, the Court is persuaded by the caution of *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), to view Section 10(b) "flexibly" rather than "technically or restrictively". The Sixth Circuit has found that "where the alleged deceptive practices have led or would lead the shareholder into a completed transaction giving rise to a Section 10(b) suit, the courts have generally inclined to a logical and flexible construction of the term 'purchaser-seller' in order to accommodate the avowed purpose of Section 10(b) of protecting the investing public and of ensuring honest dealing in securities transactions." *James v. Gerber Products Co.*, 483 F.2d 944, 948 (6th Cir. 1973). In fact, the Court in *Marsh* found that plaintiffs had standing since the shareholders there alleged that the terms of the merger exchange were the result of a fraudulent scheme and since a merger exchange constituted a sale for purposes of standing. Likewise, the Court concludes that Rule 10b–5 and the *Birnbaum* decision are best promoted by providing standing to the instant plaintiffs.

Defendant's second contention is that plaintiffs have failed to state a cause of action for which relief can be granted, relying on *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In *Hochfelder* it was held that a private cause of action for damages will not lie under Section 10(b) and Rule 10b–5 in the absence of any allegation of "scienter", i. e., intent to deceive, manipulate, or defraud on the part of the defendant. Chandler, Sr. argues that allegations of breach of fiduciary duty or corporate mismanagement do not constitute Section 10(b) or Rule

2. *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

**506**

10b–5 violations, nor are acquiescence, neglect, or "sins of omission" grounds for a 10b–5 action without actual intent to deceive, manipulate or defraud.

While the Supreme Court in *Hochfelder*, 425 U.S. at 194, n. 12, 96 S.Ct. at 1381, said, "In this opinion the term 'scienter' refers to a mental state embracing intent to deceive, manipulate or defraud," the note added, "We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5." Pre-*Hochfelder*, relying on *Lanza v. Drexel*, 479 F.2d 1277 (2d Cir. 1973), the Sixth Circuit in *SEC v. Coffey*, 493 F.2d 1304, 1314 (6th Cir. 1973), a Rule 10b–5 case, held that, "[I]t is essential that the SEC show that Coffey's inaction was in 'wilful or reckless disregard for the truth'." Relying on *SEC v. Coffey*, the Court in *Peltz v. Northern Ohio Bank*, 430 F.Supp. 382, 384 (N.D.Ohio 1976), likewise concluded that scienter required proof of either actual knowledge of misrepresentations or "wilful or reckless disregard for the truth."

The language in Count VII, given the most favorable construction for plaintiffs, indicates that the specified omitted information was known to the defendant (assuming that defendant was privy to the knowledge of the corporations' principals as alleged) when the "Explanation" and proxy materials were prepared. Also, the "Explanation" statement regarding DBFC's prosperous future was cast as an intentional misrepresentation. Count VIII further describes defendant's access to DBFC corporate records, accompanied by allegations of intentional or "wanton and reckless" conduct to plaintiffs' detriment.

■ As for the alleged breach of fiduciary duties, Rule 10b–5 does come into play "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive'" within the meaning of Section 10(b) of the 1934 Act. *Santa Fe Ind., Inc. v. Green*, 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977); *Nash v. Farmers New World Life Ins. Co.*, 570 F.2d 558 (6th Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct.

89, 58 L.Ed.2d 114 (1978). The Supreme Court defined "manipulation" under the Act as generally referring "to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Ind. v. Green*, 430 U.S. at 476, 97 S.Ct. at 1302. Breach of fiduciary duty must be accompanied by deception, misrepresentation, or nondisclosure. *See, e. g., Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Bankers Life & Cas. Co., supra*; *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). Such deceptive, misrepresentative, and nondisclosed activities were alleged by plaintiffs in this case.

■ Whether or not the representations were materially misleading by reason of the identified omissions is determined by the Supreme Court's decision in a Section 14(a) (proxy) case, *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Lower courts have consistently applied the Court's materiality standard to the securities laws in general, *see, e. g., Wheat v. Hall*, 535 F.2d 874, 876 (5th Cir. 1976), and the Justices follow the same view. *See Piper v. Chris-Craft Industries*, 430 U.S. 1, 48, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (Blackmun, J., concurring). The test is "whether a reasonable investor in making an investment decision would attach importance to the facts omitted.". *Imperial Supply Co., Inc. v. Northern Ohio Bank*, 430 F.Supp. 339, 357 (N.D.Ohio 1976). The Sixth Circuit had previously adopted this standard. *See Arber v. Essex Wire Corp.*, 490 F.2d 414 (6th Cir.), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 56 (1974); *Berman v. Gerber Products Co.*, 454 F.Supp. 1310, 1322 (W.D.Mich.1978). The information detailed in Counts III, VII and VIII, both that omitted and misrepresented, was important to plaintiffs and was material.

In *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Court enunciated the standard to be utilized in measuring a complaint for failure to state a claim:

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. 355 U.S. at 45, 78 S.Ct. at 102.

The plaintiffs have fully set forth much more than conclusory allegations of devices, schemes and artifices to defraud. The allegations in the second amended complaint, particularized in Counts III, VII and VIII, are deemed sufficient to satisfy *Hochfelder*'s scienter requirements of Rule 10b–5 and those followed in this Circuit. The complaint therefore states a claim under Section 10(b) and Rule 10b–5.

Defendant finally argues that the class action should be dismissed for failure to comply with the notice requirements of Rule 23(c) of the Federal Rules of Civil Procedure. Notice to parties and the opportunity to be heard are basic requisites of the constitutional guarantee of procedural due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Defendant contends that the February 10, 1971, Order did not satisfy such safeguards in light of the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Having met the four conjunctive requirements of Rule 23(a), the plaintiffs' motion for class certification was granted pursuant to Rule 23(b)(3). The type of notice to be used in 23(b)(3) cases is prescribed by Rule 23(c)(2). It reads in part that "the court shall direct to the members of the class the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." Subdivision (c)(2) contains an "unambiguous requirement" that "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 175, 94 S.Ct. at 2151.

The defendant contends that use of individual notice and general publication does not mean that the best possible means of notice have been employed. However, it is apparent that the Court's Order of February 10, 1971, provided for the best notice of this action practicable under the circumstances.

The Court in *In Re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977), addressed the notice requirements in 23(b)(3) actions:

"[T]he type of notice to which a member of a class is entitled depends upon the information available to the parties about that person. Consistent with this general principle, subdivision (c)(2)'s reasonable effort standard requires that, once a 23(b)(3) action has been certified, the name and last known address of each class member known to the parties or capable of being identified from business or public records available to them must be produced." *Nissan*, 552 F.2d at 1098.

Here, the Court originally ordered notice to be published in the Louisville and Lexington newspapers. In addition, individual mailings were sent to the last known address of each member of the class, ascertained from DBFC stockholder lists. Additional newspaper publications were later ordered to notify the class, as many of the individual mailings were returned as incorrect addresses. Plaintiff's February 22, 1977, report regarding claims filed in this case reveals a diligent effort on their part to locate as many of the class members as possible. The Court is convinced that the best notice practicable was provided by these notice procedures and that the efforts taken by plaintiffs to individually identify and locate the class members have been reasonable.

The Court finds that plaintiffs had standing to sue defendant Chandler, Sr.; that a cause of action was properly stated against him; and that the notice requirements of Rule 23(c) have been met. The defendant's motion to reconsider his motion to dismiss the complaint against him is therefore denied.