**ROYAL AIR PROPERTIES, INC.,** a corporation, **Harold L. Heathman** and **Madge I. Heathman,** his wife, **Appellants,**

v.

**R. Philip SMITH,** Appellee.

**No. 19020.**

United States Court of Appeals
Ninth Circuit.

June 19, 1964.

Ralph B. Potts, Seattle, Wash., for appellants.

Walter B. Williams, Bogle, Bogle & Gates, Seattle, Wash., for appellee.

Before ORR, JERTBERG and BROWNING, Circuit Judges.

ORR, Circuit Judge:

This is the second appeal to come before us in this case. On the first appeal, Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir. 1962), we held that the district court was correct in finding that certain misrepresentations of appellants, made in connection with the sale of stock in appellant Royal Air Properties, Inc., gave appellee Smith the right to recover his purchase price under § 10 (b), Securities Exchange Act of 1934 (15 U.S.C.A. § 78j(b)) and rule X–10B–5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b–5 (1949)). However, appellant had also pleaded the defenses of laches, estoppel and waiver as a bar to appellee's enforcement of his right. The trial court held that these defenses were not permissible under § 10(b) of the Securities Exchange Act of 1934. We held such ruling to be error and remanded the case for further proceedings. A second trial was had on the issues as directed whereupon the trial court held that the facts did not justify the application of said defenses of laches, estoppel and waiver. We now have that decision for consideration.

A complete statement of the facts giving rise to this suit is set out in our first opinion, but for the sake of convenience we summarize them here. Royal Air Properties, Inc., was in 1957 involved in the development of luxury apartments in Palm Springs, California. Appellee on May 16, 1957, invested some $50,000 in the purchase of Royal Air Properties stock at the solicitation of appellant Harold Heathman, a corporate officer. At about the same time appellee was elected a director of the corporation.

Several misrepresentations or omissions of fact were made by Heathman to appellee prior to his stock purchase, but for the purposes of this appeal we need concern ourselves with only one. This is Heathman's failure to inform appellee of the status of one Meade Hargiss, one of the organizers of Royal Air Properties. On April 12, 1957, Hargiss had been removed as President of Royal Air Properties; had been offered, but refused to accept, the position of Chairman of the Board; and had resigned as a director. Hargiss at that time had also demanded repayment of a loan he had made the corporation, and refused to accept corporate stock in payment of the loan as he had previously agreed to do. These omissions were held to constitute a prima facie violation of § 10(b) of the Act on the first appeal in this case.

## I

### *The Defense of Laches and Estoppel*

Appellee was aware, at the time he purchased his stock, that there was some difficulty between Hargiss and Heathman. Indeed, when appellee was in Palm Springs inspecting the property before his stock purchase Heathman asked him not to talk with Hargiss, in order to avoid widening their dispute. But appellee was not told at that time that Hargiss was no longer part of the corporate management, or that he had demanded a return of his investment.

 Appellee appears to have first learned that Hargiss was no longer part of the management on August 29, 1957, when the Board of Directors, appellee participating, passed a resolution mentioning the "difficulty" with Meade Hargiss and reciting that he had been removed as a director. Appellants urge that this is enough to impute to appellee, for the purposes of laches and estoppel, knowledge that Hargiss had demanded a return of his investment. We do not agree. It is not to be expected that every disgruntled director will insist on the return of his investment when he leaves the corporate management. Knowledge of the Hargiss claim cannot be imputed to appellee for the purposes of laches and estoppel before November 12, 1957, at the earliest. On that date the Board of Directors, appellee again participating, passed a resolution reciting that Hargiss had written the California Division of Corporations asking that the issuance of stock to him not be approved.

 Before the defense of estoppel can be maintained, the one asserting it must show he has relied on the other's conduct to his injury.[1] Similarly, one raising the defense of laches must show that the delay of the other party has resulted in a disadvantage to him.[2] Even if appellee had notice of all the elements of the misrepresentation on November 12, 1957, appellants have not shown that they thereafter suffered an injury or detriment sufficient to justify application of the defenses of laches or estoppel. All of Heathman's investments in the corporation had been made by that date, and the corporation had completed its raising of funds. Therefore, it cannot be said that new funds were raised or invested in reliance on appellee's continued participation in the venture.

Appellants established that apartment unit "E" was under construction and about 60% complete on November 12, 1957, and that many economies could have been made by cheapening or omitting certain items in the last 40% of the building. They argue here that the loss of this chance to economize is prejudice or injury sufficient to justify the application of laches or estoppel. This argument assumes that if the suggested economies had been effected and unit "E" completed at less cost, the sales price[3] of the property would not have been lessened by the same amount. The mere fact that the total cost of unit "E" could have been reduced does not establish a detriment or prejudice unless it is also shown that this savings would have benefited one of the appellants. We cannot, without a showing to that effect, assume that a savings of a given sum in construction costs would not have reduced the value of the property by at least as great a sum. We do not agree with appellant's statement that "[i]t must be apparent to anyone, that in all probability, such savings could

1. N. Litterio & Co. v. Glassman Const. Co., 115 U.S.App.D.C. 335, 319 F.2d 736 (1963); Hampton v. Paramount Pictures Corp., 279 F.2d 100, 84 A.L.R.2d 454 (9th Cir.), cert. denied 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); 3 Pomeroy, Equity Jurisprudence §§ 805 at 191–2, 812 (5th ed. 1941).

2. Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Sidebotham v. Robison, 216 F.2d 816 (9th Cir. 1954); 2 Pomeroy, Equity Jurisprudence § 419d (5th ed. 1941); 12A Fletcher, Corporations § 5606, at 199–200 (1957).

3. The property was eventually sold for $425,000 to an outsider. Appellants estimate that the proceeds will be at least $134,000 short of returning to the shareholders their investments.

have made the apartments cheaper and easier to sell." The trial court correctly found that the defenses of laches and estoppel were not sustained.

## II

### The Defense of Waiver

■ It has been held by this court that waiver is "the voluntary or intentional relinquishment of a known right. It emphasizes the mental attitude of the actor." [4] Since waiver is a voluntary act, there must be knowledge of the right in question before the act of relinquishment can occur.

Although the formulation of the doctrine is simple, the courts have not been uniform in deciding what facts will support a wavier. In particular, they have differed as to what constitutes knowledge of a right claimed to be waived. Some courts have held that there is a duty to make inquiry if one learns facts sufficient to put him upon notice, and that knowledge of all the facts that a reasonably diligent inquiry would disclose will be imputed.[5] Others have stressed that full knowledge of a right is a prerequisite to its waiver,[6] one stating that "[t]he doctrine of waiver or ratification is founded upon the fact of knowledge of all the facts, and not upon negligence." [7]

■■ When waiver is predicated upon facts of which one has inquiry, but not actual, notice, it is no longer intentional. We feel that waiver of rights under the Securities Exchange Act of 1934 should be limited to those cases where it is intended, and that therefore the right in question must be found to be actually known before waiver becomes effective. This is as it should be because there is a period of limitations applicable to cases brought under § 10(b); [8] the statutory period should not be cut short by a waiver with the mental element disregarded. To hold one to diligence in discovering his rights is reasonable in the case of laches and estoppel, where another has acted in the interim to his detriment. The defenses of laches and estoppel do not spring principally from intent, as does waiver, but from injury to the deceived party caused by neglect or misleading action to the delaying party.[9] But no detriment to a third party is required for waiver, it is unilaterally accomplished.[10] We therefore see no reason to find a waiver if one has not acted with full knowledge of his rights.[11]

With this concept of waiver in mind, we turn to the facts of the case. As was stated above, the earliest date that appellee could have received notice of the Hargiss demand for the return of his investment is November 12, 1957, at which time a resolution of the Board of Directors recited that Hargiss had resigned his

---

4. Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F.2d 824, 829 (9th Cir. 1957).

5. E.g., Commissioner of Banks v. Chase Sec. Corp., 298 Mass. 285, 10 N.E.2d 472 (1937), appeal dismissed Chase Securities Corp. v. Husband, 302 U.S. 660, 58 S.Ct. 476, 82 L.Ed. 510 (1938); Nathan v. McKernan, 170 Neb. 1, 101 N.W.2d 756 (1960); Housley v. Linnton Plywood Ass'n, 210 Or. 520, 311 P.2d 432 (1957).

6. E.g., Jones v. Union Auto Indem. Ass'n, 287 F.2d 27 (10th Cir. 1961); Chung v. Johnston, 128 Cal.App.2d 157, 274 P.2d 922 (1954); Brown v. City of Pittsburgh, 409 Pa. 357, 186 A.2d 399 (1962).

7. Most Worshipful Grand Lodge Free & Accepted Masons v. Hayes, 82 S.W.2d 411, 414 (Tex.Civ.App.1935).

8. Fratt v. Robinson, 203 F.2d 627, 37 A.L.R.2d 636 (9th Cir. 1953).

8. Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F.2d 824 (9th Cir. 1957); Kessinger v. Anderson, 31 Wash.2d 157, 196 P.2d 289 (1948).

10. Cole v. Colorado Springs Co., Colo., 381 P.2d 13 (1963); Trudeau v. Lussier, 123 Vt. 358, 189 A.2d 529 (1963).

11. See Brown v. City of Pittsburgh, 409 Pa. 357, 186 A.2d 399 (1962), which holds that "implied", as opposed to express, waiver will not be found unless the other party is mislead to his prejudice in reliance on the supposed waiver. This is closely akin to an estoppel.

positions in the corporation on April 12, 1957, and that

"thereafter the said Meade Hargiss wrote a letter to the Division of Corporations, Department of Investment, asking the Department not to approve the issuance of stock to him and sent a copy of the letter to the corporation."

Concerning this, the trial court found:

"Plaintiffs first learned that Mr. Hargiss had made a demand on the corporation at the shareholders meeting on November 12, 1957. The court is convinced, however, that plaintiff did not know all of the details of the Hargiss affair at that time. In order for plaintiff to have had a right to rescind on the basis of defendants' failure to disclose the Hargiss demand, he would have to know that the demand had been made before he purchased his stock. The court is convinced that plaintiff did not know that the Hargiss demand had been made on April 12, 1957, until the meeting that he and his attorney, Mr. Knudsen, had with Mr. Hargiss in August of 1959.

\* \* \* \* \* \*

"The court remains of the opinion expressed at the time of the original trial, namely, that there were many factors which should have aroused plaintiff's suspicions about the true nature of affairs within the defendant corporation and that it would not have been difficult for him to have fully informed himself. The court believes now, as it did then, that he was negligent—perhaps grossly so— in this regard, but such failure does not necessarily defeat his recovery

here. He was exceedingly gullible in that he was overtrusting, but this is understandable in view of the fact that his professional activities are wholly divorced from the world of business. The court finds him to be trustworthy and gives credence to his testimony."

■■ The finding of the trial court that appellee was not aware of the date of the Hargiss claim, and thus not aware of his rights under the Securities Exchange Act of 1934, is supported by substantial evidence. There are no other events pointed to which were better calculated to bring appellee's rights to his attention. Indeed, appellee's attorney talked to Hargiss in the summer of 1958 about the Hargiss-Heathman troubles, but was unable to learn all the details at that time. Since full knowledge of the Hargiss claim did not come to appellee until after he had done the acts claimed to evidence waiver, no waiver occurred.

### III

*Denial of Appellants' Motion for a New Trial*

■ Appellants also specify as error the trial court's denial of their motion for a new trial based on newly discovered evidence. The evidence consisted of a letter, supposedly showing that appellee knew that Hargiss' position was unclear when he bought his stock, which appellant Heathman found in his files after the second trial. We agree with the trial court that appellants "have not established that they were diligent in discovering the evidence sought to be introduced \* \* \*".[12] The motion for new trial was correctly denied.

Affirmed.

12. United States v. Bransen, 142 F.2d 232 (9th Cir. 1944); Lewis v. Kepple, 185 F.Supp. 884 (W.D.Pa.1960), aff'd per curiam 287 F.2d 409 (3rd Cir. 1961).