Scileppi, J.
In April of 1932 the Federal Concrete Co., Inc., executed a promissory note in the sum of $51,500 payable three months thereafter to Liberty National Bank and Trust Company and indorsed by Walter E. Jones, Philip Gr. Schaefer and two others. Schaefer died in May of that year, and subsequently a claim was filed against his estate on the unpaid note. During the administration of the estate, which went on for 28 years, a total of $19,743.54 was paid to the bank on the note. Except for two payments of $300 in 1937, the bank collected nothing from this estate from July, 1933 to December, 1960, a period of 27 years. There is no evidence that the bank made any further attempts to collect from the estate of decedent or from any of the other three indorsers of the note.
*316 The estate was inactive for many years until a proceeding for an involuntary accounting was brought in 1955 by the present administratrix c. t. a. and a cofiduciary. The bank was cited in this proceeding as a creditor of the estate. The accounts of the executor were eventually settled by a decree of the Surrogate’s Court dated December 21, 1960, which provided for the abatement of all legacies since there were no funds in the estate to pay them and awarded the balance of what assets were on hand ($22,139.59), after payment of other obligations, to the bank ‘ ‘ in full satisfaction of the claim filed against the estate in the sum of $32,356.46 * * * representing decedent’s liability as endorser on promissory notes of the Federal Concrete Company ”. Attached to the decree of December 21, 1960 is a stipulation signed by the attorneys for the bank and the attorneys for other parties, but not the legatees presently before this court. The stipulation disclosed that “ the terms, provisions and distribution provided in the Final Decree herein are acceptable and satisfactory; that the undersigned consent to the same and agree not to appeal from all or any part thereof”.
On November 22, 1961, the administratrix c. t. a. of the Schaefer estate filed a proof of claim in the amount of $41,418.34 against the estate of Walter E. Jones, as prior indorser, for the amount of payments made to the bank by the Schaefer estate. After protracted negotiations, the claim was compromised by payment of the sum of $11,000. After payment of attorneys’ fees and disbursements, the sum of $7,245.94 plus interest remains in the estate and the present controversy concerns the disposition of these additional assets.
The bank claimed that, since only $41,883.13 had been paid on the $51,500 note, there was a balance due of $9,616.87. Appellants, five Catholic institutions named as legatees, claimed the indebtedness of the estate to the bank was discharged by the December 21, 1960 Surrogate’s decree and that the moneys recovered from the Jones estate belonged to them as legatees.
The Surrogate of Erie County (RegaN, S.), despite the “ release clause ” in the prior decree, awarded the moneys to the bank stating that the decree, ‘ ‘ based on an insolvent estate, was concerned only with the matters embraced therein, and that by accepting the funds allowed it by said decree, the Liberty *317 Bank did not release finally either the Estate of Philip Gr. Schaefer or the other endorsers The Appellate Division affirmed unanimously without opinion.
The question on this appeal is whether the release contained in the Surrogate’s decree of 1960 relieved the estate of all liability arising out of the note; or whether the hank merely released its claim to any additional payments out of the assets listed in the account which became part of the 1960 decree, without intending to release its claim to any assets which might thereafter come into the estate.
The meaning and scope of a release must be determined within the context of the controversy being settled (Cahill v. Regan, 5 N Y 2d 292, 299). The release presently under consideration contains two essential recitals. The bank accepted the assets: (1) “ in full satisfaction of the claim ”; (2) “ representing decedent’s liability as endorser on promissory notes ” (emphasis added). In our opinion, this language is unmistakably clear. The word ‘‘ claim ’ ’ is modified by the words ‘ ‘ liability as endorsers on [the] note ”. Thus interpreted, it is clear that the bank was releasing the estate from all liability arising out of the note. The fact that the bank may have intended something else is irrelevant. "Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed (Single v. Whitmore, 307 N. Y. 575, 583; see, also, Lucio v. Curran, 2 N Y 2d 157, 161). If the bank intended to reserve any further claims against the estate, it should have added words of reservation or, in the alternative, deleted the words “ in full satisfaction”.
The bank points to the fact that it never surrendered the note to the administratrix c. t. a. as evidence of its intention not to release the estate from liability on the note. The fact that the bank still holds the note is not significant, or at least it is equivocal as evidence of its intent to retain any claim against the estate on the note. Each indorsement of a promissory note is a separate contract, standing apart from that made by the maker or any other indorser (Chemical Nat. Bank v. Kellogg, 183 N. Y. 92, 94). Although the bank released Schaefer’s estate from its contract of indorsement, it still has a theoretical right to recover the balance of the note from the estate of the maker *318 or the other indorsers and thus it still had the right to retain the note.
Having determined that the release contained in the 1960 Surrogate’s decree released the Schaefer estate from all liability-on the note, we must also conclude that the bank is estopped from asserting any claim to the after-acquired assets presently in question. It is well settled that a Surrogate’s decree is conclusive as to all matters contained therein (Surrogate’s Ct. Act, §§ 80, 274; Matter of Williams, 1 A D 2d 1022; Matter of Seaman, 275 App. Div. 484, 487, affd. 300 N. Y. 756; Matter of Lewin, 41 Misc 2d 72, 74-75; Matter of Van Deusen, 24 Misc 2d 611, 613-614; Matter of Weir, 182 Misc. 845; Matter of Seitz, 149 Misc. 526).
The order of the Appellate Division should be reversed, with costs in all courts, and the matter remitted to the Surrogate’s Court, Erie County, for further proceedings consistent with the findings herein.
Chief Judge Desmokd and 3 ndges Fuld, VaN Voorhis, Burke, BergaN and KeatiNG concur.
Order reversed, with costs in all courts, and matter remitted to the Surrogate’s Court for further proceedings in accordance with the opinion herein.