**Thomas H. WHEAT, Plaintiff-Appellee,**

v.

**Robert G. HALL, Warren H. Fairchild and Fairchild-Pola International, Inc., Defendants-Appellants.**

No. 75–4341
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 21, 1976.

Joel P. Kay, William A. Jackson, Houston, Tex., for defendants-appellants.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Austin C. Wilson, John D. Hughes, Houston, Tex., for plaintiff-appellee.

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal from a decision of the District Court rescinding a stock purchase agreement and an accompanying indemnity agreement and promissory note because of violations of the anti-fraud provisions of both Texas and federal securities laws. Securities Exchange Act of 1934 § 10, 15 U.S.C. § 78j; Tex.Rev.Civ.Stat.Ann. art. 581–33; Tex.Bus. & Comm.Code § 27.01.

Sitting without a jury, the District Judge found that appellants made false statements and omitted facts material to the agreement which misled appellee Wheat into participating in the transaction. The court also concluded that Wheat's claims were not defeated by the equitable defense of laches. Appellants challenge these findings as being clearly erroneous in light of the evidence adduced below. Our careful review of the record, however, reveals little that supports appellants' contentions and therefore we affirm the District Court's thorough and well-reasoned opinion in this case.

The written agreement in question was executed on May 28, 1970 as a result of serious financial difficulties encountered by Fairchild-Pola International, Inc. ("F.P.I."), a corporation engaged in the construction of prefabricated housing. The disintegrating financial condition of F.P.I. caused serious differences between Fairchild, the president of the corporation, and Hall who was both its treasurer and a named partner in the firm which provided accounting services to the company. Hall's concern over Fairchild's management policies prompted him to request that he be relieved of his duties and that his holdings of F.P.I. stock be purchased. Fairchild therefore approached Wheat, a long-term friend who was also a minority stockholder in the company, and suggested that he purchase Hall's interest in F.P.I. Armed with a grossly misleading balance sheet, Fairchild repeatedly assured Wheat both that he would incur no financial liability as a result of the stock purchase and that it was a sound investment.

During the course of these discussions, Fairchild was in constant communication with Hall. At no time, however, did Hall contact Wheat concerning F.P.I.'s growing problems, which he knew included serious financial and administrative difficulties at one of F.P.I.'s major construction projects, repeated expressions of concern by the underwriter of that project, the failure to produce materials and products satisfactory to the Federal Housing Administration, and major start-up difficulties at various F.P.I. construction sites. Moreover, Hall never informed Wheat of the nature of his conflict with Fairchild over the increasing indebtedness being incurred by F.P.I.

In its final form, the May 28 agreement between Fairchild, representing F.P.I., and Wheat and Hall provided for Wheat's purchase of all of Hall's stock in the company and for his assumption of Hall's $4,000 share of a note payable. Wheat also agreed to assume Hall's personal liability on guarantees for outstanding loans. Pursuant to Fairchild's assurance that he and F.P.I. would finance the purchase, Wheat did not pay any funds for the purchase. Although the stock purchase agreement stated that Hall had not withheld or concealed any material information from Wheat, it did provide:

> Purchaser understands and acknowledges that there is a high degree of risk involved in an investment in . . . [F.P.I.] securities; that the Company is highly indebted on notes, both secured and unsecured, with personal guarantees or endorsements on such Company notes, and does not have funds or liquid assets available to discharge such debts; and that the housing industry, in general, is subject to many adverse influences. Neither Seller nor the Company is a guarantor or insurer of the success of the Company.

F.P.I.'s difficulties reached a crisis point in September 1970, only four months after the signing of the agreement, when each member of the Board of Directors, which now included Wheat, was assessed $5,000 to keep the company in operation. Despite this infusion of new capital, F.P.I. was soon confronted with loan defaults and a resulting seizure of assets by creditors. This prompted Wheat to seek legal redress in mid-1971.

 Appellants' first contention is that the equitable remedy of rescission is improper in this case because Wheat was guilty of laches in that he participated on the F.P.I. Board of Directors for nine months after the September 1970 financial crisis made the company's severe difficulties apparent to all. Those raising the defense of laches, however, must show that the other party's delay was both unreasonable and worked to their prejudice. *Gardner v. Panama R.R.,* 342 U.S. 29, 30–31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); *Royal Air Properties, Inc. v. Smith,* 9 Cir., 1964, 333 F.2d 568, 570. As the District Judge found, Wheat's continued participation in F.P.I. affairs

> did not substantially affect the eroding trend already present in the company, nor could such a trend be diverted or deflected. Wheat's conduct in continuing to participate in the company in an attempt to revive it was reasonable under the circumstances, and Wheat is not guilty of laches in maintaining this action.

Besides Hall's self-serving statement that he would have made every effort to limit his losses, appellants have produced no evidence that Wheat's delay in seeking legal assistance was either unreasonable or prejudicial to them. The trial judge, therefore, correctly concluded that laches did not bar rescission of the stock purchase agreement. *See Royal Air Properties, Inc. v. Smith, supra.*

 Relying primarily on the provision of the agreement quoted above and on Wheat's status as a relatively sophisticated investor, appellants also contest the District Court's finding that the facts withheld or misrepresented by Hall and Fairchild were material to Wheat's decision to enter into the transaction. Under Rule 10b–5, 17 C.F.R. § 240.10b–5 (1975), the test of materiality is "whether a reasonable man would attach importance to the fact misrepresented in determining his course of action." *John R. Lewis, Inc. v. Newman,* 5 Cir., 1971, 446 F.2d 800, 804; *cf. TSC Industries, Inc. v. Northway, Inc.,* —— U.S. ——, ——, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1976) (establishing materiality standard under Rule 14a–9). Even sophisticated investors are entitled to the protections of this rule. *Stier v. Smith,* 5 Cir., 1973, 473 F.2d 1205, 1207. Although the agreement did inform Wheat of the "high degree of risk" involved in the investment, the trial judge found that

> he did not appreciate the full extent to which FPI was immediately facing financial disaster. Wheat would not have obligated himself if he had been aware of this situation, and he further would not have obligated himself if Fairchild had not repeatedly assured him of insulation from loss.

In our view Hall's silence as to the causes of his dissatisfaction with F.P.I. management policies and Fairchild's representations concerning the company's future prospects were undoubtedly material facts which induced Wheat to participate in the transaction. Therefore, we find no basis in the record for appellants' contention that the trial judge's findings were clearly erroneous.

AFFIRMED.