967 F.2d 1337
 Fed. Sec. L. Rep. P 96,842
PETRO-VENTURES, INC., an Oklahoma corporation, Plaintiff-Appellant,
v.
Gary G. TAKESSIAN, an individual, Defendant-Appellee,
Stephen R. Vrable, N. Russell Walden, and Wayne Hamersly,
Intervenors-Appellees.
 No. 90-55349.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1992.
Decided June 22, 1992.
 
 Benjamin T. Willey, Willey & Shoemaker, Oklahoma City, Okl., for plaintiff-appellant.
 John S. Einhorn, San Diego, Cal., for defendant-appellee.
 Maureen Folan, Hoge, Fenton, Jones & Appel, San Jose, Cal., for intervenors-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before: POOLE, WIGGINS, and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 We decide the validity of a release of all unknown claims in the context of a settlement of ongoing litigation, where potential violations of federal securities laws were later discovered. The general rule in this circuit is that "[a] release is valid for purposes of a federal securities claim only if [there was] 'actual knowledge' that such claims existed." Burgess v. Premier Corp., 727 F.2d 826, 831-32 (9th Cir.1984) (citation omitted). However, we must decide if the facts of this case warrant an exception to this rule.
 
 
 2
 In a business venture in May of 1986, Petro-Ventures exchanged certain oil- and gas-producing properties for partnership units in Great American Partners. Two months after the exchange, Great American Partners and its general partner, Great American Resources, Inc. (Great American Resources) filed an action against Petro-Ventures in San Diego Superior Court for breach of contract, fraud, and recission. The basis of the complaint was that the oil- and gas-producing properties did not yield the monthly revenue that had been represented by Petro-Ventures. The action was removed from San Diego Superior Court to the United States District Court for the Southern District of California.
 
 
 3
 Petro-Ventures countersued Great American Partners and Great American Resources in the Western District of Oklahoma. The action was transferred to the Southern District of California.
 
 
 4
 On May 29, 1987, Petro-Ventures, Great American Partners, and Great American Resources settled their dispute. They memorialized the terms in a comprehensive settlement agreement in which California law was selected to govern the terms and conditions. The release provision at issue is in paragraph 9 of the agreement. Paragraph 9 states:
 
 
 5
 PVI [Petro-Ventures], CUDD [the president of Petro-Ventures], GAP [Great American Partners], GAR [Great American Resources], NEEDCO [a Texas limited partnership], and Takessian hereby release any and all claims demands, damages or causes of action they might have, each against the other, based upon the negotiations for sale and the conveyance of the producing oil and gas properties which were the subject of sale and conveyance from PVI to Needco in May of 1986, regardless of whether or not said claims have been set forth in the litigation referred to in Paragraph B.1. and 2. of this agreement.[1] This release shall be effective as to PVI, CUDD, GAR, GAP, NEEDCO and Takessian and as to their successors, assigns, affiliated entities, directors, officers, employees, agents and attorneys. In further consideration and inducement for the compromise settlement contained herein, the parties expressly waive the benefit of Section 1542 of the California Civil Code which provides:
 
 
 6
 "A general release does not extend to claims which a creditor does not know or suspect to exist in his favor at the time of executing this release, which, if known by him must have materially affected his settlement with debtor."
 
 
 7
 In recognition of the settlement, Petro-Ventures paid $181,000 to Great American Resources and reassigned limited partnership units to them. In turn, certain wells were reassigned to Petro-Ventures.
 
 
 8
 The mutual parting of ways ended when Petro-Ventures filed an action against Gary Takessian[2] on December 7, 1987, in the Southern District of California, seeking damages for violations of federal and state securities laws. Vrable, Walden, and Hamersly intervened in the action. On October 20, 1988, Petro-Ventures filed another action in Oklahoma District Court against Takessian, Vrable, Walden, Hamersly, and Peter R. Crystl, alleging the same facts and issues. The Oklahoma litigation was stayed pending resolution of the action in California.
 
 
 9
 Takessian moved to dismiss on the ground that Petro-Ventures' actions were precluded by the release provision. The district court of the Southern District of California dismissed with prejudice. The court found that "the evidence indicates that the parties attempted to draw as broad a release as possible." Memorandum Decision and Order, Civ. No. 87-1744-E (CM), May 26, 1989, at 2. Observing that both parties were represented by counsel, the court stated:
 
 
 10
 In a case such as the one before this court, where the parties have negotiated at arms length and the intent of the settlement agreement is clearly to release all claims, known or unknown, it would be detrimental to allow a party to assert claims that should have been covered by the agreement. Such a result would be inequitable in light of the fact that the consideration rendered in the settlement was based upon an understanding that no further litigation would result. Furthermore, allowing the assertion of a federal securities claim in the face of such a complete settlement agreement would discourage settlement negotiations in all litigation in which a federal securities claim may eventually be discovered.
 
 
 11
 Id. at 5. The intervenors were granted a dismissal on the same grounds and the entire action was dismissed.
 
 
 12
 Petro-Ventures appeals, contending it did not know the partnership units it obtained in the exchange might not have been registered properly with the Securities and Exchange Commission.[3] Petro-Ventures maintains that the release of securities law claims was not discussed during settlement negotiations and that Takessian represented to its president, B. Keaton Cudd, III, that the units were properly registered:
 
 
 13
 During the settlement negotiations neither defendant nor anyone else connected with Great American Resources, Inc. or Great American Partners disclosed to me or Petro-Ventures, Inc. the earlier misrepresentations and omissions surrounding the May, 1986 purchase agreement. In particular, defendant continued to lead me to believe that the Great American Partners securities were in fact registered with the Securities and Exchange Commission.
 
 
 14
 Declaration of B. Keaton Cudd, III, at para. 8.
 
 
 15
 Petro-Ventures contends that unknown claims pursuant to federal securities law cannot be released under the law of this circuit, even by the execution of a settlement agreement that releases all known or unknown claims.
 
 DISCUSSION
 Standard of Review
 
 16
 The following standard of review applies to a dispute over a settlement agreement:When an appellate court restricts its review of the trial court's interpretation of a contract to an analysis of the language used in the contract, the issue of interpretation is a matter of law and freely reviewable. Thus, the determination of whether contract language is ambiguous is a matter of law. When the interpretation includes a review of factual circumstances surrounding the contract, the principles of contract interpretation applied to those facts present issues of law which this court can freely review. When the inquiry extends beyond the words of the contract and focuses on related facts, however, the trial court's consideration of extrinsic evidence is entitled to great deference and its interpretation of the contract will not be reversed unless it is clearly erroneous.
 
 
 17
 In Re U.S. Financial Sec. Litigation, 729 F.2d 628, 631-32 (9th Cir.1984) (citations omitted).
 
 
 18
 Because the district court reviewed both the prior and current litigation to decide whether the settlement agreement was a bar to the current litigation, it "focuse[d] on related facts." Therefore, we give great deference to the district court and reverse only for clear error.
 
 Whether State Or Federal Law Applies
 
 19
 In the settlement agreement, the parties agreed that "[t]he terms and provisions of this Agreement shall be construed according to California law." However, in a non-securities case, we held that "federal law always governs the validity of releases of federal causes of action." Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1457 (9th Cir.1986) (citing Dice v. Akron, Canton & Youngstown Railroad, 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952); Salmeron v. United States, 724 F.2d 1357, 1361 (9th Cir.1983); Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir.1981)). An action involving securities is no different. Where a settlement agreement calls for the application of state law, but where violations of both federal and state securities law are alleged, "[i]t is well established that federal law governs all questions relating to the validity of and defenses to purported releases of federal statutory causes of action." Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc., 558 F.2d 1113, 1115 (2d Cir.1977). The reason for this rule is that "[f]ederal statutory rights could be easily defeated if state law could be used to control the incidents of those rights and the defenses to them." Id. at 1115 n. 3.[4] This is especially true where
 
 
 20
 [d]espite the fact that some of the California Securities Laws are modeled to some degree after the Federal Securities Laws and references in the former are made to the latter, there is nothing to suggest that the two statutory schemes are to be interdependent rather than separate, autonomous systems.
 
 
 21
 Blake v. Pallan, 554 F.2d 947, 952 (9th Cir.1977) (footnotes omitted). Cf. Burgess, 727 F.2d at 831-32 (Washington State would apply federal law because the state securities act provides that it is to be coordinated with related federal law).
 
 
 22
 The Release of Federal Securities Claims During Litigation
 
 
 23
 In dealing with federal securities, the general rule is that unknown or subsequently maturing causes of action may not be waived. The federal anti-waiver provision is found in section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a), which states:
 
 
 24
 Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.
 
 
 25
 We cited this provision without discussion in Burgess. See 727 F.2d at 832.
 
 
 26
 Petro-Ventures argues that our previous decisions in Burgess and Royal Air Properties, Inc. v. Smith, 333 F.2d 568 (9th Cir.1964), are dispositive of this appeal. We acknowledge the broad language in Burgess: "A release is valid for purposes of federal securities claims only if [there was] 'actual knowledge' that such claims existed." 727 F.2d at 831. However, the facts of Burgess distinguish it from the situation before us.
 
 
 27
 In Burgess, five doctors from Seattle, Washington, invested in cattle herds. Premier, the company that sold the cattle, had represented that the cattle were of superior quality. Premier entered into management contracts with the doctors to manage the herds. Despite extensive tax deductions for the purchase, maintenance, and depreciation of the herds, all the doctors lost money on the investment. Four doctors sold their herds back to Premier while one doctor sold his herd on the open market. All sold at a substantial loss.
 
 
 28
 At the time Premier repurchased the cattle, each doctor signed a release of all claims against Premier. Burgess, 727 F.2d at 830-31. Later, however, all five doctors filed an action alleging, among other things, that they had discovered that the cattle were of low, rather than superior, quality. They alleged violations of state and federal securities law.
 
 
 29
 Premier moved for summary judgment and for a directed verdict partly on the ground that the doctors had signed the releases from liability. Id. The trial court denied the motions.
 
 
 30
 In our discussion of the releases, we said:
 
 
 31
 The motions [for summary judgment and for a directed verdict] were properly denied.
 
 
 32
 The intent of the releases, their application to known and unknown facts, and the disclosures and promises surrounding the releases were all questions addressed to the jury under Washington law and federal securities law.
 
 1. Federal securities claims
 
 33
 A release is valid for purposes of federal securities claims only if the doctors had 'actual knowledge' that such claims existed. Royal Air Properties, Inc. v. Smith, 333 F.2d 568 (9th Cir.1964). Since each doctor indicated by affidavit and trial testimony that he did not know of any claims he could have raised until after he signed the release, there was a material issue of fact for the jury. Thus, the motion for summary judgment was properly denied. Because a reasonable juror could have concluded that the doctors actually were unaware of their claims, the motion for directed verdict was also properly denied.
 
 2. State securities claims
 
 34
 While there are no cases on releases of claims under the Washington Securities Act, Washington courts would apply the 'actual knowledge' test because the state Act provides that it is to be coordinated with related federal law. RCW 21.20.900. Washington's anti-waiver provision is very similar to the federal anti-waiver provision. Cf. RCW 21.20.430(5) with 15 U.S.C. § 78cc(a). Because Royal Air Properties, supra, provides the relevant federal law for Washington state, the motions for summary judgment and directed verdict were properly denied.
 
 
 35
 Burgess, 727 F.2d at 831-32.
 
 
 36
 The Burgess facts arose in a very different context. When the doctors signed the releases, they were not involved in litigation with Premier. They were still dealing in an exclusively business relationship with Premier. We do not know whether the doctors were represented by counsel at the time the releases were signed. The facts recite only "[w]hen Premier repurchased the cattle herds from the doctors, each doctor filed a document releasing Premier from all claims." See id. at 831. When they signed the releases, the doctors were not acting in the adversarial setting that is characteristic of litigation. It was therefore appropriate to apply the general rule, because
 
 
 37
 While a buyer and seller of securities, under some circumstances, may deal at arm's length on equal terms, it is clear that the Securities Act was drafted with an eye to the disadvantages under which buyers labor. Issuers of and dealers in securities have better opportunities to investigate and appraise the prospective earnings and business plans affecting securities than buyers. It is therefore reasonable for Congress to put buyers of securities covered by that Act on a different basis from other purchasers.
 
 
 38
 Wilko v. Swan, 346 U.S. 427, 435, 74 S.Ct. 182, 186-87, 98 L.Ed. 168 (1953).
 
 
 39
 However, a totally different situation occurs where a plaintiff has affirmatively acted to release another party from any possible liability in connection with a transaction in securities. The parties here, in giving up all claims, "regardless of whether or not said claims have been set forth in this litigation referred to ... in this agreement" and in "expressly waiv[ing] the benefit of Section 1542 of the California Civil Code" were not so concerned with protecting their rights as investors as they were with establishing a general peace. See C.G.C. Music, Ltd., 804 F.2d at 1463 ("[T]he ... Release firmly evidences the parties' intent to end their various disputes ... once and for all."). We agree with the Second Circuit that
 
 
 40
 [w]hen, as here, a release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if 'the language of the release is clear, ... the intent of the parties [is] indicated by the language employed.'
 
 
 41
 Locafrance, 558 F.2d at 1115 (quoting In re Schaefer, 18 N.Y.2d 314, 317, 274 N.Y.S.2d 869, 872, 221 N.E.2d 538, 540 (1966)). There is no doubt that the language of the release is unambiguous in conveying the intent of the parties to release all unknown claims, particularly where they waived the applicability of California Code Section 1542.
 
 
 42
 Moreover, Royal Air, cited in Burgess, does not help Petro-Ventures. Royal Air deals with a waiver of rights under the Securities Exchange Act of 1934. 333 F.2d at 571. A waiver is "the voluntary or intentional relinquishment of a known right", id. (quotation omitted), but "it is unilaterally accomplished." Id. (footnote omitted) (emphasis added). In contrast, the release here is the result of negotiations between parties of equal bargaining power: it was not a unilateral relinquishment of rights.
 
 
 43
 Finally, other circuits have not applied the federal policy against the release of unknown or subsequently maturing causes of action without considering the circumstances in which a right was released. In Locafrance, the Second Circuit upheld a release in a settlement agreement arising out of a lawsuit where violations of federal securities laws were alleged, on the ground that the parties had equal bargaining positions as well as access to counsel. 558 F.2d at 1115. The Seventh Circuit has held that a party has a duty of inquiry when signing a release. Goodman v. Epstein, 582 F.2d 388, 403 (7th Cir.1978) (discussing the breadth of the anti-waiver provision of section 29(a)), cert. denied, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). The release in Goodman was not negotiated during settlement of ongoing litigation. The Seventh Circuit concluded that "[t]he mere fact that an individual has been asked to sign a release should be sufficient to put that individual on notice that a reasonable inquiry should be undertaken." Goodman, 582 F.2d at 404. While we do not decide the issue of reasonable inquiry, we assume by the unambiguous language of the release that the parties knew they were giving up all rights to future claims.
 
 
 44
 The agreement and surrounding facts point to Petro-Ventures' desire to end its litigation with Great American Partners and Great American Resources. To that end, it knowingly gave up all rights to future litigation that might arise out of the transaction. After considering extrinsic evidence, that desire was given effect by the district court. The district court's decision was not clearly erroneous.
 
 
 45
 AFFIRMED. Each party shall bear its own costs and attorneys' fees.
 
 
 
 [1]
 Paragraphs B.1 and 2 of the settlement agreement refer by case number and name to the actions in the Southern District of California and in the Western District of Oklahoma, and to the fact that the latter case was transferred to the Southern District of California
 
 
 [2]
 The appellee, Gary Takessian, and the intervenors, Stephen R. Vrable, N. Russell Walden, and Wayne Hamersly, were on the board of directors of Great American Resources
 
 
 [3]
 Petro-Ventures claims that, based upon its review of pertinent 10-K and 10-Q forms obtained from the Securities and Exchange Commission, "there was adequate evidence to support a claim that the unit shares were not properly registered as well as to support the other claims of omissions and misrepresentations in Petro-Ventures, Inc.'s complaint." Declaration of B. Keaton Cudd, III at para. 4
 
 
 [4]
 Another circuit has applied state law in such cases, but it has done so without discussion of whether federal securities law might apply. See Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 586 n. 5 (11th Cir.1987); Pettinelli v. Danzig, 722 F.2d 706, 709 (11th Cir.1984). In Finn, a release of all claims had been signed before the action for violation of federal securities law was filed. The release provided that Florida law governed its terms, Finn, 821 F.2d at 586 n. 5, but without any discussion the court applied federal law. In Pettinelli, a release was signed that prohibited any and all claims, known or unknown, to the date of the agreement. A stockholder's derivative suit was brought, but the court honored the release for all claims brought prior to the date of the release. The court applied Florida law despite the absence of any indication in the opinion that the parties had agreed to it and without any discussion of the applicability of federal law. Pettinelli, 722 F.2d at 709