92 F.3d 1193
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re RB FURNITURE, INC., Debtor.
MERCHANTS HOME DELIVERY SERVICE, Appellant,
v.
CO-TRUSTEES OF THE RB FURNITURE LIQUIDATING TRUST, Appellee.
 No. 94-56607.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1996.
Decided Aug. 2, 1996.
 
 Before: GIBSON,* NOONAN, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Merchants Home Delivery Service ("Merchants") appeals the district court's order affirming the bankruptcy court's grant of Appellee Co-Trustees of the RB Furniture Liquidating Trust's ("RB") motion to disallow Merchants' administrative claim. We reverse.
 
 I. BACKGROUND
 
 3
 RB is a furniture retailer currently in Chapter 11 bankruptcy. Merchants is a furniture delivery service that provided services to RB both before and after the bankruptcy petition was filed. On April 15, 1992, Merchants filed a $4,871,245.04 non-priority claim for all services rendered to RB, both pre and post petition (Claim No. 771). On August 27, 1992, RB filed an objection to Claim 771 on the basis that the amount claimed did not conform with RB's records. RB and Merchants then settled Claim No. 771 pursuant to the following stipulation which is the focus of this appeal:
 
 
 4
 RB and [Merchants] do hereby agree and stipulate that the above-entitled court may enter an order sustaining RB's objections to Claim No. 771, but allowing said claim as general unsecured pre-petition claim against RB's estate in the amount of $235,831.27. Nothing contained herein shall prejudice the rights of Claimant, if any, to file a timely priority claim in RB's Chapter 11 case with respect to goods sold or services rendered by Claimant on or after the date of filing of the involuntary petition in RB's Chapter 11 case.
 
 
 5
 The bankruptcy court entered an order pursuant to the stipulation sustaining RB's objections to Claim No. 771 and allowing the claim as a general unsecured pre-petition claim in the amount of $235,831.27.
 
 
 6
 Merchants then filed a proof of a Chapter 11 Administrative Claim and Request for Payment in the amount of $67,650.65 in post-petition services. RB responded by filing a motion to disallow Merchants' administrative claim on the grounds that the services and invoices upon which Merchants based its administrative claim were barred by virtue of the order encompassing the stipulation. Merchants took the position that the second sentence of the stipulation reserved to it the right to upgrade the status of its post-petition invoices by filing an administrative claim irrespective of whether those invoices were settled as part of the first sentence of the stipulation.
 
 
 7
 RB supported its position with an affidavit from Sandra Smith, RB's vice-president for finance, stating that the services upon which Merchants based its administrative claim had been either paid or compromised and disallowed as part of Claim No. 771 pursuant to the first sentence of the stipulation. RB also included an affidavit from Webb Farrer, the attorney who drafted the stipulation for RB, stating that the second sentence was added to allow Merchants to submit a priority claim for post-petition services other than those covered by the stipulation's resolution of Claim No. 771, not those submitted as part of Claim No. 771.
 
 
 8
 Merchants opposed RB's motion with affidavits from Steven Rubenstein, the attorney who had negotiated the stipulation for Merchants, and Merchants' president, Jim Allyn. Rubenstein testified in his affidavit that Merchants had insisted on the second sentence of the stipulation in order to preserve its right to later seek a reclassification of its Claim No. 771 post-petition invoices as an administrative priority claim. Allyn testified in two affidavits that Merchants had never intended to waive its right to file a priority claim with respect to its post-petition Claim No. 771 services, and that there were no outstanding claims outside of those included in Claim No. 771.
 
 
 9
 The bankruptcy court held a hearing on March 28, 1994. After considering the conflicting evidence regarding the parties' contractual intent, the bankruptcy court found the order incorporating the stipulation to be consistent with RB's representations of its understanding of the agreement, and inconsistent with Merchants' representations. The bankruptcy court accordingly found Merchants' administrative claim to have been previously satisfied in full and compromised under the terms of the stipulation and order sustaining objections and allowing Claim No. 771. In its subsequent order entered April 20, 1994, the bankruptcy court granted RB's motion to disallow Merchants' administrative claim and denied Merchants' motion for sanctions.
 
 
 10
 Merchants appealed to the district court, which affirmed the bankruptcy court's decision. In its October 27, 1994 order, the district court found the stipulation ambiguous as susceptible to either RB or Merchants' interpretation, but concluded that the bankruptcy court was not clearly erroneous in adopting RB's construction of the agreement. The district court also rejected Merchants' request for sanctions.
 
 II. DISCUSSION
 
 11
 This Court reviews the final order of the bankruptcy court directly and independently of the district court's decision. This court applies the same standards of review as the district court, reviewing the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Park-Helena Corp., 63 F.3d 877, 880 (9th Cir.1995), cert. denied, 116 S.Ct. 712 (1996); In re U.S. Trustee, 32 F.3d 1370, 1372 (9th Cir.1994). The interpretation of an ambiguous contract subject to more than one possible construction is a mixed question of law and fact. Miller v. Safeco Title Ins. Co., 758 F.2d 364, 367 (9th Cir.1985). The determination of whether language used in a settlement agreement is ambiguous is one of law, which this Court reviews de novo. Petro-Ventures, Inc. v. Takessian, 967 F.2d 1337, 1340 (9th Cir.1992). When the trial court looks beyond the agreement's language and considers extrinsic evidence, however, the trial court's interpretation of the agreement is a finding of fact that will not be reversed unless clearly erroneous. Id. "When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable de novo." Miller, 758 F.2d at 367. "When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous." Id.
 
 
 12
 Merchants asserts that the stipulation is not ambiguous because it is susceptible to only one reasonable interpretation--it's own. Merchants gives four reasons why the stipulation can only be interpreted so as to reserve to it the right to submit a priority claim for post-petition services included in the Claim No. 771 stipulation: (1) the second sentence unambiguously and unqualifiedly reserves Merchants' right to submit "services rendered by claimant on or after the date of filing the involuntary petition in RB's Chapter 11 case"; (2) the second sentence contains no exceptions limiting its right to submit a priority claim for post-petition invoices to those not included in the stipulation; (3) there are no additional invoices not included in the Claim No. 771 stipulation; and (4) Merchants' interpretation of the second sentence is wholly consistent with the testimony offered in opposition to RB's motion to disallow Merchants' administrative claim. In short, Merchants argues that the language of the second sentence should be read to modify the broad statement of the first sentence (i.e. all invoices claimed in Claim No. 771 shall be satisfied or compromised pursuant to the stipulation, except those post-petition invoices which Merchants may later submit as a priority claim). RB agrees that the stipulation is unambiguous because it is susceptible to only one reasonable interpretation--its own. It points out that the plain terms of the stipulation satisfy in full or compromise all invoices submitted as part of Claim No. 711 as a general unsecured pre-petition claim, expressly reserving none for later resubmission as a priority claim. The only reasonable application of the second sentence, it asserts, is to invoices not included in the settlement contained in the first sentence. Even if the stipulation were ambiguous, RB argues that the bankruptcy court's adoption of its interpretation is not clearly erroneous.
 
 
 13
 We conclude that the stipulation unambiguously permits the priority assertion of administrative claims regardless of whether they were included in the Claim No. 771 settlement and compromise. The language of the stipulation might initially lead the reader to believe that the second sentence referred only to invoices for services not included in the settlement referenced in the first sentence as claimed by RB; however, it does not explicitly say that. It is important to understand that the bankruptcy court had not yet set a date on priority claims submission, as opposed to unsecured claims submission, at the time the stipulation was negotiated. That factor posed a dilemma for a creditor having both unsecured and possible priority claims. Based on the language of the stipulation itself and the maxim that "a contract should be interpreted so as to give meaning to each of its provisions," Brinderson-Newberg v. Pacific Erectors, 971 F.2d 272, 279 (9th Cir.1992), cert. denied, 113 S.Ct. 1267 (1993), it appears that Merchants' interpretation is the correct one. RB's interpretation gives no effect whatsoever to the second sentence because Merchants would have been entitled to submit post-petition invoices not included in the settlement of the unsecured claims as a priority claim regardless of the stipulation or any reservation clause. RB would insert the word "other" into the second sentence, but there is no basis for that. The record is clear that there were no "other" post-petition invoices. Consequently, RB's version of the agreement cannot stand.[3]
 
 III. CONCLUSION
 
 14
 For the aforementioned reasons, we reverse the order of the bankruptcy court disallowing Merchants' administrative claim and remand for proceedings consistent with this memorandum disposition.
 
 DAVID R. THOMPSON, Circuit Judge, dissenting:
 
 15
 I respectfully dissent.
 
 
 16
 I agree with the district court's reading of the stipulation. It is ambiguous, the district court considered extrinsic evidence and resolved the ambiguity, and its finding as to the intention of the parties is not clearly erroneous. I would affirm for the reasons state by the district court in its well-reasoned order filed October 27, 1994.
 
 
 
 *
 The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [3]
 We deny both parties' motions for sanctions pursuant to Fed.R.Civ.P. 11, Fed.R.Bankr.P. 9011, or Fed.R.App.P. 38