PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHARD N. MOSEMAN, an
individual; DANIEL ROUSSEAU,
*Plaintiffs-Appellants,*

v.

BLAKE VAN LEER, an individual;
GARNET, INCORPORATED; GARNET OF
VIRGINIA, INCORPORATED, now known
as King George Landfill,
Incorporated; GARNET OF
MARYLAND, INCORPORATED; GARNET
ENTERPRISES, INCORPORATED; CROSS
ROAD TRAIL, INCORPORATED, ROLLINS
AVENUE, INCORPORATED; KING
GEORGE LAND COMPANY,
INCORPORATED; BKJB PARTNERSHIP, a
Georgia corporation; ROBERT D.
CHEELEY, an individual; JAMES E.
BUTLER, JR., an individual; BOBBY
M. THOMAS, an individual; KEITH R.
BREEDLOVE, an individual,
*Defendants-Appellees.*

No. 00-2072

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-98-434-WMN)

Argued: June 4, 2001

Decided: August 27, 2001

Before WILKINSON, Chief Judge, KING, Circuit Judge, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by published opinion. Senior Judge Beezer wrote the opinion, in which Chief Judge Wilkinson and Judge King joined.

---

**COUNSEL**

**ARGUED:** Geoffrey P. Gitner, LAW OFFICES OF GEOFFREY P. GITNER, Washington, D.C., for Appellants. James Strother Crockett, Jr., TROUTMAN, SANDERS, MAYS & VALENTINE, L.L.P., Richmond, Virginia; Andrew David Levy, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Stephen A. Northup, Robert A. Angle, TROUTMAN, SANDERS, MAYS & VALENTINE, L.L.P., Richmond, Virginia; Thomas M. Wood, IV, NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., Baltimore, Maryland; William G. Broaddus, Ronald M. Cherry, Erik C. Martini, MCGUIRE WOODS, L.L.P., Richmond, Virginia, for Appellees.

---

**OPINION**

BEEZER, Senior Circuit Judge:

Richard Moseman and Daniel Rousseau appeal the district court's entry of summary judgment in favor of defendants. Plaintiffs' claims are based on common law fraud and on federal and state securities statutes. We have jurisdiction and we affirm.

Moseman, Rousseau and defendant Blake Van Leer formed a business in the mid-1980s to develop and operate refuse disposal landfill sites in Maryland and Virginia. To that end, they formed several corporations (the "Garnet corporations"), dividing the common stock of each company as follows: 50% to Moseman, 25% to Rousseau and 25% to Van Leer. In February 1995, due to the corporations' financial difficulties, Moseman, Rousseau and Van Leer transferred 25% of the issued and outstanding stock in the Garnet corporations to the BKJB Partnership[1] in exchange for a $5 million loan. According to Mose-

---

[1]The BKBJ Partnership is an entity formed by defendants Robert D. Cheeley, James E. Butler, Jr., Bobby M. Thomas and Keith R. Breedlove.

man and Rousseau, on November 20, 1995, Van Leer informed them that there was a "problem," that the King George landfill site was nearly worthless and that BKJB would not provide additional funding unless Moseman, Rousseau and Van Leer gave up another 40% of their stock together with executed proxies in favor of BKJB. The 40% stock interest was transferred. The right to vote the remaining shares was assigned to BKJB in exchange for another $1 million. These arrangements were designed to give BKJB 65% of the shares and 100% of the voting rights. The proxy documents were not executed at that time.

As the Garnet corporations' financial condition deteriorated, the principals sought a new investor or purchaser. Moseman and Rousseau allege that, around November 29, 1995, Van Leer and BKJB adopted a scheme, using "secret information" that the supposedly worthless King George landfill was actually worth $150 million.

In December, Van Leer entered into negotiations with an individual investor, William Blanchet. The agreement Van Leer negotiated provides: (1) Blanchet with 80% of the stock; (2) Van Leer with 20% of the stock; (3) Moseman with $1 million cash and a $2.55 million eight year contingent note; (4) Rousseau with a $2.412 million contingent note, a five year consulting agreement, lifelong health insurance, and release of a $2 million debt; and (5) BKJB with loan repayment, $6.376 million in cash, and royalties from the King George landfill. Moseman and Rousseau assert that Van Leer, BKJB and Blanchet concealed the fact that Moseman and Rousseau were to receive less consideration than that received by the remaining parties.

The Blanchet agreement was never consummated. In January 1996, before the parties signed the papers, BKJB began to negotiate a more lucrative agreement with the Sanifill Corporation. As a condition of providing ongoing financing for the projects, Sanifill required all the shareholders' proxies in order to transact corporate affairs. Because Moseman, Rousseau and Van Leer had not executed the proxies as promised in November 1995, BKJB insisted that they do so at that time. Moseman, Rousseau and Van Leer complied. The final agreement with Sanifill resulted in the following provisions: (1) Moseman received $1 million, a $2.55 million eight year contingent note and royalties from the (defunct) Rollins and Cross Road landfills; (2)

Rousseau received a $2.414 million eight year contingent note, satisfaction of a $2 million debt, a weekly consulting salary and health insurance; (3) Van Leer received $2 million in cash, repayment of $675,000 owed him by one of the Garnet corporations and royalties from the King George landfill; and (4) BKJB received $6 million in cash, repayment of its loans to the Garnet corporations and royalties from the King George landfill. Before accepting the proposed agreement, Moseman asked what consideration Van Leer (but not Rousseau or BKJB) would receive. Moseman then signed a release of all claims specifically disclaiming any reliance on representations by any other party to the transaction. Rousseau signed a materially identical release after declining to be represented by counsel and stating that he would be satisfied if he received the same terms under the Sanifill deal as he would have obtained from Blanchet. He declined to make any further inquiries with respect to any other parties' negotiated consideration.

Several months after the agreement was consummated, Moseman and Rousseau first learned that the total consideration supporting the Sanifill transaction was $32 million. This action was initiated against Van Leer, the Garnet corporations, the BKJB Partnership and individual defendants Cheeley, Butler, Thomas and Breedlove. Defendants moved for summary judgment, which the district court granted.

I

Moseman and Rousseau allege that Van Leer's representation that the King George landfill was virtually worthless fraudulently induced them to dilute their ownership position in the Garnet corporations. Consequently, according to Moseman and Rousseau, they owned a smaller percentage interest in the Garnet corporations at the time of the Sanifill transaction than they would have absent Van Leer's alleged fraud. This diminished ownership interest resulted in Moseman and Rousseau receiving less consideration from Sanifill than they believe they should have received. Moseman and Rousseau also claim that Van Leer fraudulently led them to believe that the total value of the Sanifill transaction was lower than it actually was, thus preventing them from negotiating a more lucrative agreement for themselves.

The parties dispute whether negligence is the appropriate standard by which to measure justifiable reliance on Van Leer's factual representations. If the plaintiffs justifiably relied on a misrepresentation, they may rescind the releases and go forward with their claims. *Snyder v. Herbert Greenbaum and Assocs., Inc.*, 380 A.2d 618, 621 (Md. App. 1977).[2]

The district court correctly held Moseman and Rousseau to a negligence, rather than a recklessness, standard in determining the justifiability of their reliance on Van Leer's statements. A party is justified in relying on another's factual assertions unless, "under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." *Gross v. Sussex Inc.*, 630 A.2d 1156, 1166 (Md. 1993). Negligence is the yardstick by which the Maryland courts measure justifiable reliance. *Dep't of Gen. Svcs. v. Harmans Assocs. Ltd. P'ship*, 633 A.2d 939, 947 (Md. App. 1993) (in claim for equitable adjustment, question was whether reliance on representation with respect to conditions was "reasonable"). If the factual context would prompt a reasonable person to initiate a further investigation into the details of a proposed agreement, then failure to inquire would render any reliance unjustifiable and not a ground to rescind the release.

The district court also correctly concluded that, under a negligence standard, neither Moseman nor Rousseau justifiably relied on Van Leer's representations. First, both Moseman and Rousseau explicitly eschewed relying on any such representation when they signed the releases. Second, Moseman's attorney admitted in a deposition that he was suspicious that Van Leer was withholding information, but did not press further. Third, Moseman and Rousseau failed to inquire further of any of the parties to the transaction when full information was not forthcoming from Van Leer, despite the fact that there were no impediments to them doing so.

---

[2]Maryland law controls the interpretation of the releases in this diversity case.

## II

Moseman and Rousseau next assert that the releases they signed are void under federal and state securities laws. *See* 15 U.S.C. § 78cc(a) (2000) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."); Md. Code Ann., Corps. & Ass'ns. § 11-703(h) (2000) ("Any condition, stipulation, or provision binding any person acquiring any security or asset or receiving any investment advice to waive compliance with any provision of this title or any rule or order under this title is void.").

Maryland courts examine federal case law when interpreting state securities statutes which, like section 11-703(h), are worded similarly to their federal counterparts. *Cf. Baker, Watts & Co. v. Miles & Stockbridge*, 620 A.2d 356, 369-70 (Md. App. 1993) ("In reaching our decision, we are aided by federal court interpretations of sections of the federal securities acts that are similar to § 11-703(c).").

The district court relied on *Goodman v. Epstein*, 582 F.2d 388 (7th Cir. 1978), to support its holding that despite the strong language of 15 U.S.C. § 78cc(a), "a release may be valid as to mature, ripened claims of which the releasing party had knowledge before signing the release," and that a party would be charged with "knowledge" of those claims that he or she could have discovered upon "reasonable inquiry." Moseman and Rousseau argue that the *Goodman* "reasonable inquiry" standard is result-oriented and inconsistent with the general disfavor in which securities law holds releases. *See, e.g.*, *Fox v. Kane-Miller Corp.*, 398 F. Supp. 609, 624 (D. Md. 1975), *aff'd,* 542 F.2d 915 (4th Cir. 1976) (release defense held in "very strong disfavor" in securities cases). Instead, they assert, the district court should have employed the "actual knowledge" test used by the Ninth Circuit. *See Burgess v. Premier Corp.*, 727 F.2d 826, 831 (9th Cir. 1984) ("A release is valid for purposes of federal securities claims only if the [plaintiffs] had 'actual knowledge' that such claims existed.").

We are not aware of Fourth Circuit or Maryland case law that addresses the release issue. We conclude that the *Goodman* "reasonable inquiry" standard, rather than the *Burgess* "actual knowledge"

test, sufficiently meets the purposes of the Securities Act when a release is given as bargained for consideration.

We note that *Burgess* relies on *Royal Air Properties, Inc. v. Smith*, 333 F.2d 568 (9th Cir. 1964). *Royal Air* does not involve a signed release at all, but rather an *implicit waiver* of the right to sue. In fact, the *Royal Air* court specifically observes that waiver is "unilaterally accomplished." *Id.* at 570. In contrast, the release we consider is bargained-for. This distinction is dispositive:

> The mere fact that an individual has been asked to sign a release should be sufficient to put that individual on notice that a reasonable inquiry should be undertaken. No longer do we have the innocent investor sitting back and merely holding his security; we are not requiring an innocent investor continually to question management concerning his investment, but only to undertake a "reasonable inquiry" prior to taking the affirmative act of signing a release.
>
> . . . .
>
> The requirement that a person exercise reasonable inquiry to discover possible matured claims existing at the time of execution of a [release] does nothing to defeat the general policy against the in futuro waiver of securities claims. Quite to the contrary, it insures that the signing of a [release] is something that will not be undertaken lightly, with the expectation that the [release] will be unenforceable . . . because the party executing [it] kept his eyes closed, and therefore did not "know."

*Goodman*, 582 F.2d at 404 (citation omitted) (drawing distinction between securities fraud cases involving implied waiver or "due diligence" defense and those involving a signed release).[3]

---

[3]*See also Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1342 (9th Cir. 1992) (in case holding that section 78cc(a)'s anti-waiver provision did not bar release signed in context of ongoing litigation, noting distinction between unilateral waiver and release which was "the result of nego-

The district court correctly concluded that neither Moseman nor Rousseau conducted a reasonable inquiry with respect to whether they had claims against Van Leer. Despite the fact that they were asked to sign releases, neither of them inquired further (whether to Van Leer or any other party to the transaction) into the total value of the transaction, the value of the consideration the others received, or any other matter. Furthermore, Moseman's attorney failed to act upon the suspicions that his client was not being treated fairly. Moseman signed the release anyway. The releases Moseman and Rousseau voluntarily signed bar their claims.

*AFFIRMED*

---

tiations between parties of equal bargaining power" but explicitly declining to decide the issue of reasonable inquiry raised in *Goodman*). *Cf. Jadoff v. Gleason*, 140 F.R.D. 330, 333-34 (M.D.N.C. 1991) (citing *Goodman* and *American Gen. Ins. Co. v. Equitable Gen. Corp.*, 493 F.Supp. 721, 751 (E.D. Va. 1980), for the "reasonable discovery" standard, but voiding release because the document in question "stated only a belief as to the receipt of information" and therefore would not have put the plaintiff on notice to inquire).